UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLARENCE HERNDON #136007,

    Plaintiff,                                            Hon. Jane M. Beckering

v.                                                              Case No. 1:21-cv-470

CHARLES TRAYLOR, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the Charles Egeler Reception and Guidance Center, filed a complaint against Defendants John Davids, the Warden at Ionia Correctional Facility (ICF), Charles Traylor, the ICF Deputy Warden, and David Maranka, MDOC Community Health Services Manager at ICF, on June 8, 2021, pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendants violated his Eighth and Fourteenth Amendment rights by adopting, maintaining, and enforcing a policy or custom of indefinite isolation and segregation that precluded a realistic possibility of his release to a general population setting. (ECF No. 10 at PageID.121.) In particular, Plaintiff alleges that Defendants violated his rights to procedural and substantive due process and equal protection, and his right to be free from cruel and unusual punishment, by maintaining him in this status indefinitely. (*Id.* at PageID.123.) Plaintiff also alleges that Defendant Maranka was deliberately indifferent to his serious medical need by denying him a medical transfer to a facility equipped to address Plaintiff's medical issues. (*Id.* at PageID.121.)

Now before me is Defendants' Motion for Summary Judgment and Qualified Immunity, filed on May 31, 2022. (ECF No.23.) In spite of two extensions of time to respond to the motion, first to September 29, 2022, and then to October 11, 2022 (ECF Nos. 36 and 42), Plaintiff has failed to file a timely response. Also before me is Plaintiff's Motion for Declaratory Judgment (ECF No. 37), to which Defendants have responded. (ECF No. 47.) Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that Defendants' motion be **GRANTED,** Plaintiff's motion be **DENIED**, and the complaint be **dismissed with prejudice**.

### I. Background

On February 5, 1996, while serving a sentence of incarceration with the MDOC at the Huron Valley Men's Facility, Plaintiff murdered a corrections officer who was working in the prison store. In October of 1998, Plaintiff was convicted of first-degree murder following a jury trial. *See Sperle v. Michigan Dep't of Corrs.*, 297 F.3d 483, 487–88 (6th Cir. 2002). Following the murder, Plaintiff was held in administrative segregation at ICF until October 22, 2008. (ECF No. 27-2 at PageID.211.) Beginning on October 22, 2008, Plaintiff was placed in General Population Custody Level 5 at ICF. With the exception of brief stints in an Intermediate Care Program and one day in Punitive Segregation, Plaintiff remained at that level for the duration of his time at ICF. (*Id.*; ECF No. 27-3 at PageId.214.) On March 10, 2021, Plaintiff was transferred to the Charles Egeler Reception and Guidance Center on a hospital designation for treatment of his rheumatoid arthritis, prostate cancer, and depression. (ECF No. 27-2 at PageID.211; ECF No. 27-4 at PageID.227.)

In October 2017, Plaintiff was enrolled into a pilot program called START that provided an alternative to segregation. (ECF No. 27-3 at PageID.214.) The START Program is designed to assist prisoners who have mental and/or behavioral issues with developing skills and abilities that will enable them to successfully transition to the general population. (ECF No. 27-5 at

PageID.255.) Participants in the program are granted many of the benefits of general population custody that are less restrictive than what is allowed in administrative segregation. (*Id.* at PageID.258–59.) Such benefits include religious and library services, as well as privileges such as showers, visitation, and movement. (*Id.*) For example, START prisoners receive more showers and yard time per week and have greater access to electronic devices than segregation prisoners. (ECF No. 27-3 at Page.217.) Participants move through the program in stages, with stages 0 or 1 being the most restrictive and allowing the fewest privileges. As participants move through the stages (up to stage 3), they are provided more privileges as they prepare for eventual placement in a traditional general population setting. (ECF No. 27-5 at PageID.261–62.)

During his time in the program, Plaintiff never progressed beyond stage 2 due to his custody and security needs. (ECF No. 27-6 at PageID.275.) However, he received the same privileges as other START prisoners, with three exceptions because of his violent history. First, he was not permitted to come out of his cell without restraints. Second, he was required to spend his yard time in a carrel. Finally, Plaintiff was not permitted to have a job assignment. (ECF No. 27-3 at PageID.216–17.)

## II.  Motion Standard

Generally, where the non-moving party fails to respond to a motion for summary judgment, "the district court must, at a minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden." *Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998)). Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III. Discussion

#### A. Motion for Summary Judgment

##### 1. Due Process

Plaintiff alleges that Defendants violated his rights to procedural and substantive due process by maintaining him in conditions amounting to administrative segregation.

The Fourteenth Amendment protects an individual from deprivation of life, liberty, or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient. . . ." *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted). In *Sandin v. Conner*, 515 U.S. 472 (1995), the Court held that a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause, entitling a prisoner to due process protections, only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation

4

imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 486-87.

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008). Generally, periods of segregation lasting several years or more have been found to be atypical and significant. *See, e.g., Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

Here, as set forth above, from October 2017 to the time he was transferred in March 2021, Plaintiff was housed in General Population Level 5 as part of the START program, which provides for greater privileges and is generally less restrictive than administrative segregation, and allows participants the opportunity to reenter the general population based on improved behavior. "Such a program, which is less restrictive on the whole than the administrative segregation at issue in *Sandin*, necessarily falls short of an atypical and significant hardship." *Jackson v. Berean*, No. 1:18-CV-1075, 2019 WL 1253196, at *11 (W.D. Mich. Mar. 19, 2019), *aff'd*, No. 19-1583, 2019 WL 6208147 (6th Cir. Nov. 19, 2019). Plaintiff thus fails to establish that his confinement pursuant to the START Program was atypical and significant in light of his life sentence and violent

5

background. *See Dickerson v. Davids*, No. 1:21-cv-401, 2021 WL 3928667, at *4 (W. D. Mich. Sept. 2, 2021) (dismissing the plaintiff's due process claim where the plaintiff admitted to receiving regular evaluations for release from the START program as a "high security risk" prisoner, and the plaintiff's record of assaults and possession of weapons provided ample support to continue him in the START program); *Burton v. Michigan Dep't of Corrs.*, No. 1:21-cv-156, 2021 WL 2820665, at *7 (W.D. Mich. July 7, 2021) (dismissal of due process claim warranted because the plaintiff failed "to allege facts showing that the Start Unit was atypical and significant in light of his life sentence").

Plaintiff also alleges a substantive due process claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). However, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 269 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)). If such an amendment exists, the substantive

due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). Here, Plaintiff fails to articulate how his substantive due process claim differs in any respect from his procedural due process claim. Moreover, to the extent Plaintiff complains of indefinite isolation in administrative segregation, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiff concerning his deliberate indifference claims. *See Graham*, 490 U.S. at 394 (citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986)) (rejecting a substantive due process claim where the Eighth Amendment supplies a textual source for prison-condition claims). Therefore, I recommend that the substantive due process claim be dismissed as well.

## 2. Equal Protection

In Count III of his amended complaint, Plaintiff alleges that Defendants violated his right equal protection under the Fourteenth Amendment by subjecting him to discriminatory animus and disparate treatment as compared to other prisoners in the START Program who were classified to stage 3. (ECF No. 10 at PageID.123.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect

class, or has no rational basis.'" (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006)). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Village of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018).

Plaintiff's equal protection claim is subject to dismissal because he fails to identify a similarly situated comparator. Although Plaintiff claims that he was treated differently than other prisoners in the START program who were classified to stage 3, he fails to identify a prisoner who was similarly situated in all relevant respects. In this case, an appropriate comparator would be a prisoner with a similar incarceration history that includes murder of a corrections officer. Plaintiff's claim fails for this reason alone. In addition, because Plaintiff's claim is not based upon his membership in a suspect class or upon interference with a fundamental right, Defendants' challenged conduct need only have a rational basis to withstand a constitutional challenge. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 29 (1973). In other words, Defendants' decision not to reduce Plaintiff's security classification must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis" for maintaining Plaintiff at a more secure custody level. *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). This test is easily met here, as MDOC has a legitimate interest in maintaining Plaintiff at a secure custody level that prevents him from murdering or harming another staff member or prisoner.

### 3. Eighth Amendment

Plaintiff asserts two claims based on the Eighth Amendment. First, he contends that his confinement in the START Program amounted to cruel and unusual punishment and that

Defendant Maranka violated his Eighth Amendment rights by denying him a "medical transfer to a facility applicable to Plaintiff's serious medical needs." (ECF No. 10 at PageID.122.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).The Eighth Amendment prohibits any punishment that violates the civilized standards of humanity and decency or involves the unnecessary and wanton infliction of pain. *See Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976). To prove an Eighth Amendment violation, an inmate must show that he has been deprived of the minimum civilized measures of life's necessities. *See Rhodes*, 452 U.S. at 347. Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is typically insufficient to support an Eighth Amendment claim. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008); *see also Lacey v. Michigan Dep't of Corr.*, No. 95-1097, 1995 WL 564301 (6th Cir. Sept. 21, 1995) (placement in detention did not violate Eighth Amendment); *Eaddy v. Foltz*, No. 84-1419, 1985 WL 14065 (6th Cir. Dec. 18, 1985) (whether an Eighth Amendment claim is stated for placement in segregation depends upon severity or pervasiveness of conditions).

As for his claim based on placement in confinement that amounted to administrative segregation, Defendants' evidence shows that during the limitations period preceding the filing of this action, Plaintiff was not held in administrative segregation, but instead was housed in General Population Custody Level 5 through March 31, 2021, when he was transferred to the Charles

9

Egeler Reception and Guidance Center to receive medical treatment. (ECF No. 27-2 at PageID.211; ECF No. 27-3 at PageId.214.) In addition, as set forth above, the START Program is an alternative to administrative segregation that provides more privileges than administrative segregation. Plaintiff fails to show he was deprived of basic human needs or that he was otherwise subjected to unconstitutional conditions of confinement during his placement in the START Program.

As for Plaintiff's claim that Defendant Maranka denied him a transfer to another facility that was better equipped to meet his medical needs, this claim is governed by the deliberate indifference standard. Determining whether denial of medical care amounts to an Eighth Amendment violation involves two steps. First, the court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need" sufficient to implicate the Eighth Amendment is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018).

If the plaintiff satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361

F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847). To satisfy this part of the analysis, the plaintiff must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005).

Plaintiff fails to establish either component of his claim. While Plaintiff has been diagnosed with rheumatoid arthritis, prostate cancer, and major depression (ECF No. 27-4 at PageID.227), he has not shown that he was not receiving treatment for these conditions at ICF. In addition, Defendant Maranka states he had no authority to transfer Plaintiff for treatment of his rheumatoid arthritis because he did not provide medical treatment to Plaintiff.[1] (ECF No. 27-6 at PageID.276.) While Defendant Maranka did provide mental health treatment to Plaintiff, he affirms that Plaintiff's mental health needs were being met at ICF. (*Id.*) Plaintiff has not refuted this showing.

### 4. Qualified Immunity

Defendants also move for summary judgment on all claims on the basis of qualified immunity. The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). An "objective legal reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The qualified immunity inquiry requires a court to decide whether the facts as alleged or shown make out a constitutional violation and whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct.

---

[1] Although ECF No. 27-6 purports to be an affidavit from Defendant Traylor, the substance of the affidavit, as well as Defendant Maranka's signature, clearly shows that it is simply mislabeled as being from Defendant Traylor rather than Defendant Maranka.

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either prong of the inquiry without regard to sequence. *Id.* at 236.

Because I have concluded that Plaintiff has failed to create a genuine issue of material fact on his Fourteenth Amendment due process and equal protection claims, as well as his Eighth Amendment claims, it is unnecessary to determine whether Plaintiff has demonstrated that Defendants' conduct violated clearly established law. Therefore, Plaintiff's claims fail on the first prong of the analysis.

### B. Motion for Declaratory Judgment

Plaintiff has filed a motion for declaratory judgment declaring that Defendants violated his rights under the Eighth and Fourteenth Amendments. Plaintiff is not entitled to declaratory relief because he lacks standing for a declaratory judgment. As the Sixth Circuit has observed, "allegations of past injury alone are not sufficient to confer standing." *Fieger v. Ferry*, 471 F.3d 637, 643 (6th Cir. 2006). Instead, "[t]he plaintiff must allege and/or 'demonstrate actual present harm or a significant possibility of future harm.'" *Id.* (quoting *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998)). This is because the purpose of declaratory relief is "the clarification of legal duties for the future, rather than the past harm a coercive tort action is aimed at redressing." *AmSouth Bank v. Dale*, 386 F.3d 763, 786 (6th Cir. 2004). Here, Plaintiff's allegations of injury are limited to past harm. Therefore, Plaintiff fails to demonstrate a basis for declaratory relief. In addition, even if Plaintiff had a basis for such relief at one time, he has been transferred from ICF to another facility for medical treatment. The Sixth Circuit has held that transfer to another prison facility moots a prisoner's injunctive and declaratory claims. *See Kensu*

*v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Accordingly, I recommend that the Court deny Plaintiff's motion for a declaratory judgment.

## IV. Conclusion

For the reasons set forth above, I recommend that the Court **grant** Defendants' motion for summary judgment (ECF No. 23), deny Plaintiff's motion for a declaratory judgment (ECF No. 37), and dismiss Plaintiff's complaint with prejudice.

I further recommend that an appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

Dated: November 14, 2022                               /s/ Sally J. Berens
                                                       SALLY J. BERENS
                                                       U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).